Good morning, Your Honors. Devin Burstein, Federal Defenders, on behalf of Mr. Rodriguez-Garcia. Your Honors, the crux of this case is really whether the rap sheet in the government's possession prior to entering into the plea agreement showed that Mr. Rodriguez had suffered a prior 245P assault with a deadly weapon conviction. Because the rap sheet did unequivocally demonstrate that he had that conviction, it can't be considered a newly discovered conviction that could trigger the exception in the footnote. Therefore, the government was obligated to comply strictly with the literal terms of the plea agreement and recommend only a four-level enhancement or a sentence of no more than 10 months. So what I was struggling with was in part the standard of review, which we've been remarkably unclear about. But the district court says, I've been doing this for 20 years. I look at this rap sheet and it does not show a conviction. And when I looked at it, I didn't see the word convicted for this. So if we're looking at the district court's determination or interpretation, are we looking, is it a clearly erroneous standard of review? Is it a de novo review? How would you characterize that? I think in this case it would clearly be de novo. It is true that there has been some inconsistency. But it makes sense when you really break it down. Because, for example, let's say there was a dispute as to the exact words Mr. Casper had said or the trial lawyer below had said. And there needed to be some factual credibility-type finding. Was the light green or red? Well, the district court, as this court repeatedly says, is in the best position to make those kind of determinations. But counsel, I don't know why it actually even matters here. If the rap sheet is as clear as your argument and as it appears to me, speaking only for myself, of course, then there's clear error, too, because you can't be on parole to finish out a term if you haven't been convicted of the underlying crime in our system. So I'm not sure why there's so much emphasis on the standard of review by both sides. It seems to me it's either really clear or it doesn't exist at all. Your Honor, I couldn't agree more. I think we said in our briefs, and I think we were pretty clear, it doesn't matter, the standard of review. Because even to your point, it's pretty crystal clear that, you know, parole is revoked. And you can't have, like you said, you can't have your parole revoked unless you first stand. Isn't that an inference, though? I mean, we have this case, I don't think it was cited, called Sutton, which says that if the government has to make an inference, that's not actual knowledge. Isn't it an inference required? And the district court said, I don't see it. Your Honor, if I could, I think what the district court did was didn't read all the way down on the page to see the revocation because it's not, he doesn't talk about that. Did the defendant raise that? The defendant specifically said it's obvious on the, or the defendant pointed to the rap sheet. And in any case, I think it doesn't really matter because what's clear is that when we look at the rap sheet, when I got this case and look at the rap sheet, it's here and it's not an inference. And the reason it's not an inference is because you don't need to infer it because from kind of circumstantial evidence, you have it clear because you can't have. Elsewhere it says convicted, disposition, convicted, committed to prison for a different offense. But it doesn't say that with respect to the 459 offense, right? Right, Your Honor. But there's multiple ways to say the same thing. And for example, if I told you, Your Honor, I said, you know, Your Honor, it's a problem. My parole was revoked. You would say, oh, what were you convicted of? I mean, it's by definition that you can't have your parole revoked unless you've first been convicted. And that's why we know very well from the rap sheet. And, Your Honor. It doesn't even say that 245B violation of parole, right? It says count one, but it doesn't say which count one. So in other words, you're making an inference with these various numbers and things. And when I looked at it, it certainly wasn't obvious to me what it was saying. Well, Your Honor, just holding them up. And I think Judge Graber's making the point. It says count one, 245B. Then it says count one. Before that it has a case number, which is also repeated. Correct. Sorry, Your Honor. Just holding both of them up. And later on it says count one, a different one, 1010851. And then later on it says count one, 1010851. And then it says count one again. And it was count ones all over the place. But Judge Ikuda, there's only one count one that says D50749. So you're asking, you're saying the district court should have inferred from the count one and this number that further down on the sheet there was a violation of parole. And from that he should have inferred that the 245B he was convicted of, which the rap sheet doesn't say, and that's the same offense down here. I mean, that's what I'm sort of struggling with. And it seems like the clear error de novo review might make a difference here. Well, Your Honor, assuming for the sake of argument that it's not 100 percent crystal clear, and I can't see that. I think it is 100 percent crystal clear, as Judge Graber was indicating. You shouldn't apply clear error review because this is not the type of factual determination to which you would defer. And that's what I was getting back to initially when Judge Graber said. Why is that? Why does it matter? Because this is not something where the district court is in a better position than you are, Your Honor. This is not a the light was green, the light was red. Well, Judge Burns said I've got 20 years' experience reading these rap sheets, and I've got six. Well, respectfully, Your Honor, I believe Judge. Well, isn't the district court in a better position than I am? Respectfully, Your Honor, I believe Judge Burns might be a little rusty on this point. I mean, he has been on the venture a while. And, you know, we do. Careful. I know. He'll hear. He'll hear. But it's, you know, respectfully, taking your point, Judge Graber, it's pretty clear. You know, it's really clear that if you see a revocation, you should know that that resulted from a conviction. And then taking us back, because the revocation demonstrates that there was a conviction, the government was obligated to recommend the plus four. They knew about it. They had the information showing it ahead of time, and they were obligated to strictly comply. Now, once there is a breach, as in Alcala, which I had the pleasure of arguing before you, Your Honor, there's no other option. The case must be remanded for resentencing before a different district court judge. Is that an absolute rule requiring a different judge? Yes, Your Honor. It comes from Santabello, and this court has said it time and again that, you know, and there's a footnote in Alcala I'd point Your Honor to. Look, we're not saying this is not your fault. No, no, I know what Alcala said, but I just, it runs counter to other situations in which we, in our circuit, don't have the policy of necessarily sending it to a different district judge. In every case you found a breach, and the reason is because the purpose, and the language I like is from Alcala, is you've lost the benefit of the united front, and that's really the benefit you get in the plea agreement. And once that's lost, you've lost everything. And so we need the united front before a different district court judge. I see that I have a minute. Let me ask you a question. Oh, yes, Judge. Why was it reasonable for your client to assume that the government knew about this 245B conviction? Because it's plain on the rap sheet, Your Honor. Why would they have agreed to a plus-4 when it should have been plus-12 then? It was a mistake. Right. So they didn't know about it, right? Yes. They may not. You're conceding that the government did not know about 245B. No, I'm conceding that his statement in the declaration is accurate. I'm not saying he was trying to pull the wool over Mr. Rodriguez's eyes. I don't dispute his honesty. But it seems to me your client, for your position to prevail here, we've got to find that your client could reasonably assume that the government did know about the 245B conviction but was nonetheless cutting him this incredibly sweet ordeal, right? I think for us to prevail, you need to see that the rap sheet had that information. This is a fast-track plea agreement. It's a contract. The mistake inures to our benefit. And that's where we win in our position. I'm not saying that the government was disingenuous. I'm not calling him a liar. I mean, he has a sworn declaration, and I believe, I know Mr. Casper, I believe him. But that doesn't matter. The government has an obligation to make plea agreements that they can keep. They have an obligation to review the records before they make deals. I mean, we have the government on one side and the loss of Mr. Rodriguez's fundamental liberty on the other side. So I think that to the degree that there's any issues here, they inure to our benefit because the government is obligated to exercise care. And this Court has said they can't make deals you can't keep. And that's exactly what happened here, Your Honor. Thank you. One second. Thank you. We used a lot of your time with questions, and you will be given a minute for rebuttal. Thank you very much, Judge Graber. Thank you, Your Honor. May it please the Court. Good morning, Your Honor. Lawrence Casper for Appellee of the United States. Your Honors, appellants claim that the rap sheets are unambiguous. It's simply belied by the record here. Nowhere on the rap sheets, as Judge Ikuda has pointed out, is there any showing of a disposition on the 245B. There's no ---- But, Counsel, you have to concede as a matter of law that a person cannot experience a violation of parole and be committed to finish a term of imprisonment if the person has not been convicted of a crime. Your Honor, I certainly wouldn't argue that black letter point. Okay. So here you have count one in case number D-50749, identifying about four inches above where it says violation of parole to finish term on the same page. And, you know, it seems to me at least that what happened was a mistake, but, you know, the government made a bad bargain from its point of view. But why isn't it bound by its bad bargain? Well, Your Honor, first, as Judge Ikuda pointed out, this is separated by a number of other entries, first of all. Second of all, this was a multi-page rap sheet that the government reviewed and reviewed multiple rap sheets in this case. Now, it is clear from the record that the defendant was convicted of something. And it's very clear that he was convicted of the burglary because it indicates right on the rap sheet five-year sentence for the burglary. There's no indication anywhere on that rap sheet of a sentence for the ADW, the assault. Now, the government's conclusion, and it's certainly reasonable and Judge Burns found it to be reasonable, was that what occurred here was the defendant was convicted of the burglary and ultimately there may have been some, his parole may have been revoked. Well, let me ask you a different question. If the court were to disagree with you on the clarity of the mistake, that it would have been obvious, or it should have been obvious, what happens then? Well, Your Honor. Are you bound by the bargain? Your Honor, the bargain indicates, and let's kind of go back for a second. That's a yes or no question. If it's clear from the rap sheet, do you lose? No. Why? Because, Your Honor, the language in the agreement was new or additional or contrary information. Okay. In my hypothetical, it's not new. It was already there. So that's why it seems to me to be tied together. If reading this rap sheet where it has count one, case number such and such, and it describes assault with a deadly weapon on a peace officer, and then, you know, it says count one, same case number, return to prison to finish the term after revocation of parole, if that's clear, and I know you don't concede it, but if that's clear, I don't understand why it would be new information. Well, it would certainly be, we believe it would be additional information. I understand Your Honor's point. Well, if that's true, then all the government would ever have to do to get out of a plea agreement is ask for a little bit more paper that says exactly the same thing as the paper it already has, and that would be additional. So why is that what I ask? Well, that's not this case, Your Honor. And let's remember the context in which this case was. I know that, but you're running away from the hypothetical, which I understand. But if it is clear from the rap sheet, I don't see how you can consider that new and additional information. Your Honor, if the rap sheet had said convicted 245, it would be clear from the rap sheet. As I think Your Honor and Judge Acuda's disagreement has shown, this rap sheet is not clear. It certainly wasn't clear to me, and what was clear to me was that the defendant had a conviction for burglary and that ultimately there had been some sort of revocation. Now, I agree with Your Honor if you parse numbers on this plea agreement retroactively after knowing that the defendant had received a conviction, which was the information that we received at the time we got the criminal history report and subsequently obtained and reviewed the actual conviction records. And remember, in this circuit, this court has explicitly told the government you can't rely on a rap sheet to enhance an individual at the time of sentencing. You've got to have the conviction documents enhanced. That is not in the context of arriving at a plea agreement before you get to court, is it? No, Your Honor, that is not. Okay, so you can rely on any information that you have or don't have in deciding what bargain is appropriate in a given case. Certainly, Your Honor. So you could have arrived at this bargain even had you known that if you had wanted to. Your Honor, first of all, you've heard from Mr. Burstein. He's indicated that my statement at the outset, and I was involved, obviously, in this throughout, that we didn't know. We had no knowledge, actual knowledge, and Judge Burns, who we believe his decision should be respected and accorded deference here, concluded that there was no constructive knowledge on the part of the government. Well, subjectively you didn't, and the question is objectively whether that's reasonable. I mean, those are two different things. No one questions your integrity in all of this. So if it said that there was a conviction, so say there was a statement, like on the second sheet it says, Dispo convicted, committed to prison for a different offense. If it had said, as to the 245e, Dispo convicted, and it was on a page that was far in the back of the rap sheet and you just missed it, would you still take the position that you hadn't known or the government hadn't known? That, Your Honor, would be a different case. Even if you had missed it. If I had missed it and it had been clearly enunciated on the rap sheet in that manner, I would agree that it was unambiguous. But here, that's not the case. So here we've got information from which the government could have inferred that there was a conviction, though it doesn't say so expressly. And so you're saying, although you could have inferred it, that that is not equivalent to actually knowing it or to having actual knowledge. Am I correct on that? That is absolutely correct, Your Honor. That is not akin to actual knowledge. And reasonable minds can review these rap sheets and disagree on what they show. But in this case, in looking at an appropriate plea agreement for the defendant in the context of a fast-track plea deal, which we do hundreds of these deals over the course of time, we look, we make an early and initial review of the rap sheet. We make a determination. We put out what we believe to be an appropriate offer. And I know that this Court in other cases has been critical of the government because and transfiguration is one of those cases where it was the government as the draft or the contract that failed adequately to protect itself. Let me ask you this, counsel. Do you think it was unreasonable for the defendant to assume that you knew about the 245B conviction? Absolutely. And, in fact, Well, why is that? That doesn't strike me as obvious at all. Well, Your Honor, for several reasons. One, the defense counsel below admitted at page 100 of the excerpts of record that this was, in fact, contrary information. She also acknowledged that the agreement, that the rap sheets themselves were ambiguous. So for the, and there's no Let me stop you. Okay. I'm the defendant, right? We're engaged in a negotiation. I know I've been convicted of that 245B count, right? And I know it would get me plus 12 if everything went according to the way it normally does. But you offer this, what seems to me, a sweetheart deal. You give me the rap sheet that shows that at least it's possible to infer that, hey, I have, in fact, been convicted of it. I assume that you know that. And we engage in a negotiation. And you agree to give me the plus 4. Why is it unreasonable for me to assume that, hey, you must have just wanted to cut me a break today? Well, Your Honor, for a couple reasons. Because the government has an obligation, and we take that obligation seriously, to inform the court correctly as to the specific, the correct specific offense characteristic and the guideline calculations. And the defense, and defense counsel certainly knew that below and should have advised their client of that. For the defendant here to be lying in the weeds, so to speak, trying to subvert the process in that way. I'm not. We'll set that aside. I'm the defendant. Hold on. I'm the defendant. I'm not trying to subvert the process. You've given me the rap sheet that I think shows that, hey, I have, in fact, been convicted of this. I don't know why you're giving me a plus 4 instead of plus 12, but I'm happy. And that rap sheet, Your Honor, shows numerous other convictions or charges on, over multiple pages. And the entire rap sheet wasn't submitted to the court as part of the record, but over multiple pages. And so there are multiple offenses listed there that arguably are similarly ambiguous, if you will, or maybe defense would have construed them somehow as clear. But there are multiple other offenses listed on that rap sheet. Now, certainly, if we're going to say that every offense listed on a rap sheet holds the government to the standard of actual knowledge when, down the road, it turns out based on a. . . I don't think it matters whether you had actual knowledge. I think what matters is whether I, as the defendant, could reasonably believe that, in fact, you knew about it. And, Your Honor, I don't believe that the defendant here could reasonably believe this. And, ultimately, the defendant here got the benefit of his bargain. He got the acceptance of responsibility points. He got the fast-track points. He got the low end of the guideline range. And, remember, in exchange for the fast-track points, the appellant agreed to and entered into this plea agreement, which contains this footnote. What's more is there's . . . the defense counsel has an obligation to fully inform the defendant as to all of what may occur in terms of the plea here. And, certainly, would have been obligated to agree that there was a possibility that the government . . . that this offense wasn't clear on that rap sheet, which was the case. Counsel, you've exceeded your time, and I think we pretty clearly understand the government's position. Thank you, Your Honor. Thank you. You have one minute, Mr. Bruschi. Thank you, Your Honor. Listening to government counsel's arguments, I'm reminded a little bit of Judge Kaczynski's words from Garcia Aguilar. And he wrote, Due to U.S. Attorney's oversight, defendant may avoid the sentence to which they may have been subject under 1326b-2. So be it. That was the mistake that was made, and they have an obligation to stick with their deal. And, Judge Wofford, going to your . . . the point I think you've been trying to make, it's clear from the Monzo case decided by this Court this year, that it is the defendant's understanding at the time of the plea that controls. So I think looking at, you know, everything that happened, I think the defendant would be in a perfectly reasonable thing to say, Yeah, I got a really good deal here. That's what happens in fast track. You know, it happens. But it doesn't excuse mistakes. This Court is crystal clear. Mistakes don't excuse the government from performing. Thank you, Your Honor. Thank you, Counsel. The arguments of both parties have been very helpful in this challenging case, and the case is submitted for decision.
judges: Graber, Ikuta, Watford